```
          IN THE UNITED STATES DISTRICT COURT FOR THE
                 SOUTHERN DISTRICT OF ALABAMA
                       SOUTHERN DIVISION
```

JANICE DIXON WILLIAMS,            :

    Plaintiff,                    :

vs.                               :   CIVIL ACTION 08-0422-CG-M

TOM JONES, *et al.*,              :

    Defendants.                   :


REPORT AND RECOMMENDATION

Plaintiff, who is proceeding *pro se* and *in forma pauperis*, filed a handwritten Complaint for violations of her civil rights and civil liberties by filling in the *Pro Se Litigant Guide*'s example of a complaint.  (Doc. 1).  With her Complaint she filed a Motion to Proceed Without Prepayment of Fees, which was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) and Local Rule 72.2(c)(1) for appropriate action.[1]  Because Plaintiff sought leave to proceed *in forma pauperis* under 28 U.S.C. § 1915 when she filed her Motion, the Court is required to screen the Complaint under 28 U.S.C. § 1915(e)(2)(B).  *Troville v. Venz,* 303 F.3d 1256, 1260 (11th Cir. 2002) (applying § 1915(e)

---

[1] Local Rule 72.2(c)(1) provides for the automatic referral of non-dispositive pretrial matters to a Magistrate Judge.

to non-prisoner actions).[2]  After screening the Complaint, it is recommended that this action be dismissed with prejudice, prior to service of process, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief can be granted.

I.  Complaint. (Doc. 1).

Plaintiff's jurisdictional grounds are identified as violations of "civil rights [and] civil liberties - conspiracy[.]" (Doc. 1 at 1).  No individual federal law or constitutional right was specified.

Plaintiff maintains that violations of her rights and liberties occurred when she was maliciously arrested, unlawfully prosecuted, and wrongfully incarcerated during the arbitration process. (*Id.* at 7).  She further alleges that Defendant Jones conspired with the police departments of Daphne and Mobile and the Baldwin County Sheriff's Department. (*Id.*).

---

[2]Section 1915(e)(2)(B) provides:

> (2)  Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that --
>     (A)  the allegation of poverty is untrue; or
>     (B)  the action or appeal –
>         (i) is frivolous or malicious;
>         (ii) fails to state a claim on which relief may be granted; or
>         (iii) seeks monetary relief against a defendant who is immune from such relief.

Plaintiff names five entities as Defendants, Tom Jones, an employee with East Bay KIA; Baldwin County, Alabama; City of Mobile; City of Daphne; and KIA Motors America. (*Id.* at 1). The following is a description of Plaintiff's claims against Defendants.

In October, 1999, Plaintiff purchased a KIA Sportage from Mr. Boone for $13,000.00. (*Id.* at 2). She believed that her car was a new 1999 model, but in reality, it was 1997 model. (*Id.*). She discussed this misrepresentation with Defendant Jones. (*Id.*).

During the arbitration process, which took four years, Plaintiff returned the vehicle to the dealership twenty-six times for repairs. (*Id.*). Plaintiff purchased an extended warranty during this time period "after Mr. Jones told [her] that with the extended warranty, he would get [her] a new replacement Sportage when KIA removed this model from sales until the mechanical bugs could be remedied." (*Id.*). She also learned that Defendant Jones wanted to refund the purchase price but preferred to replace the vehicle and "eat the difference on the new price" for her inconvenience. (*Id.*). She agreed to this. (*Id.*).

In 2005, an air bag exploded while the vehicle was idling in the driveway, injuring Plaintiff's right ankle. (*Id.*). She reported her injury to Defendant Jones and asked for a replacement vehicle. (*Id.*). Defendant Jones "immediately put

[her] in the 2005 auto as [she] had been promised," but he required that she sign an "off-the-lot" form while he was preparing the title. (*Id.*). Defendant Jones sent a wrecker to pick up the 1997 Sportage and told Plaintiff to report the injury to KIA Customer Affairs. (*Id.*).

Plaintiff's injury was diagnosed by an orthopedic doctor as a damaged tendon. (*Id.*). This injury has caused Plaintiff to hobble on her injured ankle, thereby causing her pain and problems with her hip, back, and other foot. (*Id.*). When she told Defendant Jones of her diagnosis, he wanted her to submit a false claim on her auto insurance instead of seeking compensation from KIA for her injury and defective vehicle. (*Id.*). Plaintiff declined to do this. (*Id.*).

Defendant Jones then told her to return the vehicle. (*Id.*). He said that he would agree with KIA Customer Affairs which was considering whether to provide Plaintiff with a rental or a replacement vehicle while her claim was being processed. (*Id.*). Plaintiff was directed to drive the 2005 Sportage until her 1997 Sportage was disposed of, and she was told that Defendant Jones would be informed of this decision. (*Id.*). Several weeks later Defendant Jones called Plaintiff, demanding that she return the vehicle. (*Id.*). But Plaintiff was advised by her new attorney, Martin Pearson, that she should continue to drive the vehicle while he investigated the "ventor number delay." (*Id.*).

4

Meanwhile, Defendant Jones sent three "strange men to [Plaintiff's] house in the dark who nearly ran [her] off the road as [she] returned home." (*Id.*). Plaintiff then called 911. (*Id.*). The "Mobile Policy explained the Breach of Peace - civil matter that should been a Repossion Order that no judge would sign." (*Id.*). In an attempt to get the vehicle back on the lot, Defendant Jones was using the "off-the-lot" form as a basis for a claim for the failure to return the 2005 Sportage from a test drive. (*Id.*).

Plaintiff contacted her attorney, Mr. Pearson, who told her that this is a civil matter, not a crime for which she can be arrested, and that she is entitled to replacement transportation. (*Id.* at 4). Nonetheless, she requested Mr. Pearson to make an appointment for the vehicle's return because she feared being arrested. (*Id.*). Mr. Pearson called Plaintiff back telling her that he spoke with Kelvin Williams at KIA Customer Affairs about Defendant Jones's actions. (*Id.*). Mr. Pearson cancelled the return of the vehicle until he could finish his investigation of the purchase and history of the 1997 Sportage. (*Id.*).

Later when Plaintiff spoke with Defendant Jones by telephone, he told her that he was in "big trouble" with an operations person for letting her take the vehicle before it was titled. (*Id.*). She told him that she thought that he had forfeited their agreement regarding the replacement due under

5

extended warranty.  (*Id.*).  He told her to tell Mr. Williams to include in the settlement that Plaintiff should retain the vehicle.  (*Id.*).  Plaintiff claims that Defendant Jones authorized her to keep the 2005 Sportage and to pursue her losses from KIA CA with an attorney.  (*Id.*).

In September, 2006, East Bay KIA and Defendant Jones had Plaintiff arrested for theft of property and seized the vehicle.  (*Id.* at 4-5)*.*  Mr. Pearson met with Defendant Jones to discuss the arrest and learned that Defendant Jones knew that "he had sold a defective and older auto; and he used his police friends to help him get the car back and teach [Plaintiff] a lesson by scaring [Plaintiff] (someone was suppose to call [her] at home not come to get [her])."  (*Id.* at 5).  Mr. Pearson then withdrew as her attorney because he was a witness to Defendant Jones's admission "that he used the legal system to get the car back (have his way)."  (*Id.*).  Mr. Pearson told her that "someone in the DA's office was upset with [Defendant] Jones when he call and told them he was sorry he used them."  (*Id.*).  Plaintiff's charge was reduced by the grand jury to unauthorized use of a vehicle, to which she pled not guilty.  (*Id.*).  She refused to plead guilty and receive a two-month probation sentence and have her file sealed, a plea bargain to which Defendant Jones agreed.  (*Id.*).  The Baldwin County District Attorney later nol prossed the charge on July 17, 2006.  (*Id.* at 5-6).  Mr. Pearson told

Plaintiff that she was wrongfully prosecuted and denied her civil rights.  (*Id.* at 6).

Plaintiff maintains that she needs surgery on her ankle, which requires a one-year recovery period; remains under treatment for mental distress; is experiencing problems with her hip, back, and other foot, as a result of her injury to her ankle, and with her lupus, due to the stress and trauma of the explosion and arrest; is without a vehicle which accommodates her other disabilities and must use other non-accommodating transportation; has nothing to show for her $13,000.00; and has paid medical and legal expenses.  (*Id.*).  For relief, Plaintiff seeks replacement of her vehicle and $250,000.00.  (*Id.*).

II. Analysis.

   A. Standards of Review Under 28 U.S.C. § 1915(e)(2)(B).

Because Plaintiff is proceeding *in forma pauperis*, the Court is reviewing the Complaint (Doc. 1) under 28 U.S.C. § 1915(e)(2)(B).³  Under § 1915(e)(2)(B)(i), a claim may be dismissed as "frivolous where it lacks an arguable basis in law or fact."  *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831-32 (1989).  A claim is frivolous as a matter of law

---

³The frivolity and the failure-to-state-a-claim analysis contained in *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827 (1989), was unaltered when Congress enacted 28 U.S.C. § 1915(b)(2)(B) in 1996.  *Bilal v. Driver*, 251 F.3d 1346, 1349 (11th Cir.), *cert. denied*, 534 U.S. 1044 (2001).  However, dismissal is now mandatory under § 1915(e)(2)(B).  *Bilal,* 251 F.3d at 1348-49.

where, *inter alia,* the defendants are immune from suit, *id.* at 327, 109 S.Ct. at 1833, or the claim seeks to enforce a right that clearly does not exist.  *Id.*

Moreover, a complaint may be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted.  *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997).  To avoid dismissal for failure to state a claim, the allegations must show plausibility.  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556, 127 S.Ct. 1955, 1965-66 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level[.]"  *Id.* at 1965, 127 S.Ct. at 555.  That is, the allegations must be a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'"  *Id.* at 1966, 127 S.Ct. at 557. (second brackets in original).  However, "labels and conclusions and a formulaic recitation of a cause of action's elements" are insufficient grounds for entitlement to relief.  *Id.* at 1965, 127 S.Ct. at 555.  And when a successful affirmative defense, such as a statute of limitations, appears on the face of a complaint, dismissal for failure to state a claim is also warranted.  *Jones v. Bock,* 549 U.S. 199, 215, 127 S.Ct. 910, 920-21 (2007).  When dismissing a complaint for failure to state a claim, the Court takes the allegations as true.  *Jones v. Bock,* 549 U.S. 199, 215, 127 S.Ct. 910, 920 (2007).

In a *pro se* litigant's action, the allegations are given a liberal construction by the Court. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595-596 (1972) (holding that a *pro se* litigant's allegations are held to a more lenient standard than the those of an attorney). However, the Court does not have "license . . . to rewrite an otherwise deficient pleading [by a *pro se* litigant] in order to sustain an action." *GJR Investments v. County of Escambia, Fla.,* 132 F.3d 1359, 1369 (11th Cir. 1998). Furthermore, a *pro se* litigant "is subject to the relevant law and rules of court including the Federal Rules of Civil Procedure." *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir.), *cert. denied*, 493 U.S. 863 (1989).

B.  <u>The Court's Subject Matter Jurisdiction</u>.

The Court's first inquiry in this action is into its jurisdiction because its jurisdiction is limited. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 1675 (1994). That is, a federal court is authorized by the Constitution or Congress to hear only certain types of actions. *Id.* Those actions that lie "beyond its statutory grant of subject matter jurisdiction," the federal court is without power to act upon. *Smith v. GTE Corp.,* 236 F.3d 1292, 1299 (11th Cir. 2001). It is a plaintiff's duty in a federal civil action to set forth in the complaint the basis for the Court's subject matter jurisdiction. *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir.

1994) ("[T]he pleader must affirmatively allege facts demonstrating the existence of jurisdiction and include a short and plain statement of the grounds upon which the court's jurisdiction depends."); *Kirkland Masonry, Inc. v. Comm'r*, 614 F.2d 532, 533 (5th Cir. 1980)(same).[4]

In the Complaint Plaintiff alleges violations of her "civil rights [and] civil liberties." (Doc. 1 at 1). This assertion is general and does inform the Court of the particular jurisdictional basis for her claim. The two most common bases for federal subject matter jurisdiction are diversity of citizenship jurisdiction and federal question jurisdiction. In regard to diversity of citizenship jurisdiction, the federal district court has "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States . . . ." 28 U.S.C. § 1332(a)(1) (2005). Plaintiff indicates that four of the five Defendants are citizens of Alabama. The mere presence of one non-diverse defendant destroys diversity of citizenship jurisdiction. *Wisconsin Dept. of Corrections v. Schacht,* 524 U.S. 381, 388, 118 S.Ct. 2047, 2052-53 (1998). Accordingly, the Court finds that it

---

[4]The Eleventh Circuit in *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), adopted as binding precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.

does not have diversity of citizenship jurisdiction over Plaintiff's action due to the failure to establish that all Defendants are citizens of a state other than Alabama.

"Absent diversity of citizenship, a plaintiff must present a 'substantial' federal question in order to invoke the district court's jurisdiction."  *Wyke v. Polk County School Bd.,* 129 F.3d 560, 566 (11th Cir. 1997).  Under federal question jurisdiction, district courts are given "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331 (1980).  "In general, a case 'arises under' federal law if federal law creates the cause action. . . ."  *Pacheco de Perez v. AT&T Co.,* 139 F.3d 1368, 1373 (11th Cir. 1998).  Whether an action arises under federal law is determined by the "well-pleaded complaint" rule.  *Id.*  That is, a court is required to look at the complaint to determine based on the face of the complaint whether the complaint contains a claim arising under federal law.  *Id.*

    C.   <u>An Action Under 42 U.S.C. § 1983</u>.

Inasmuch as the Complaint contains no reference to a federal law, the Court's review of the statutory provisions that are most consistent with Plaintiff's allegations indicates that Plaintiff is attempting to bring an action under 42 U.S.C. § 1983.  In order to state a claim under 42 U.S.C. § 1983, a plaintiff must establish:  "(1) . . . the conduct complained of was committed by

a person acting under color of state law; and (2) . . . this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1913(1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 330-31 (1986).  However, Defendants KIA Motors America and Jones appear to be entities that do not ordinarily act under state law; rather, they appear to be a private business and an employee for a business.  Nevertheless, they can be found to be acting under state law if they conspire with someone who is a state actor. *See Tower v. Glover,* 467 U.S. 914, 920, 104 S.Ct. 2820, 2824 (1984) (finding when a public defender conspired with a state actor the public defender acted under state law).  Nevertheless, it is a "rare circumstance[] {when] a private party [can] be viewed as a 'state actor' for section 1983 purposes."  *Harvey v. Harvey,* 949 F.2d 1127, 1130 (11th Cir. 1992).

To this end, Plaintiff conclusorily asserts that Defendant Jones conspired with Defendants City of Mobile, City of Daphne, and Baldwin County Sheriff[5] during the arbitration process to

---

[5]Plaintiff identified Baldwin County as a Defendant.  (Doc. 1 at 1).  But in the description of her claims, she refers to Baldwin County Sheriff, Baldwin County District Attorney's Office and DA's Office.  These three entities are not identified as Defendants, nor are they being treated by the Court as Defendants.  It is, however, the actions of these three entities about which Plaintiff complains and appears to base her claims against Baldwin County.

"obtain a malicious arrest" of Plaintiff. (*Id.* at 7). Conspiracy is mentioned only one other time when Plaintiff used the word conspiracy in his identification of the jurisdictional grounds. (*Id.* at 1).

The law for stating a conspiracy claim, however, requires that Plaintiff show "evidence of agreement between defendants" to violate her rights. *Rowe v. Ft. Lauderdale,* 279 F.3d 1271, 1284 (11th Cir. 2002). This necessitates that Plaintiff provide more than a label or a conclusion. *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1965. She must raise her right to relief above the speculative level and show sufficient facts to suggest an agreement was made. *Id.* at 556, 127 S.Ct. at 1965. In addition to pleading facts to show that an understanding was reached to deny Plaintiff her rights, an "underlying actual denial of [her] constitutional rights" must be shown. *Hadley v. Gutierrez,* 526 F.3d 1324, 1332 (11th Cir. 2008). However, Plaintiff has not alleged facts showing that an agreement was reached to violate her constitutional rights with a governmental Defendant.

In the Complaint, Plaintiff's references to the governmental Defendants are almost non-existent except for the allegation that Defendant Jones conspired with Defendants City of Mobile, City of Daphne, and Baldwin County Sheriff during the arbitration process to maliciously arrest Plaintiff. (*Id.* at 7). Otherwise, there are no more references to the named governmental Defendants but

13

only to an entity's employee or division.  That is, Plaintiff refers to Defendant Jones's "policy friends," which the Court construes to be police friends (Doc. 1 at 3, 5), and to the "DA's office," the Baldwin County District Attorney, and to the Baldwin County Sheriff.  (*Id.* at 5).  After careful review of the Complaint the Court is unable to find evidence of an agreement by Defendant Jones with any named governmental Defendant.  In fact, there are allegations to the contrary which undercut a finding of a conspiracy.  That is, when Plaintiff alleges that someone in the District Attorney's Office was upset when Defendant Jones called and "told them he was sorry that he had used them."  (*Id.* at 5).  Accordingly, the Court finds that Plaintiff's claim of a conspiracy is vague and conclusory and unsupported by facts, thereby rendering a conspiracy implausible.  Thus, she has failed to state a conspiracy claim upon which relief can be granted. *Fullman v. Graddick,* 739 F.2d 553, 556-57 (11th Cir. 1984) (finding that a vague and conclusory allegation of conspiracy is subject to dismissal); *cf. Twombly,* 550 U.S. at 556-57, 127 S.Ct. at 1996 ("Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality.").

    Based on Court's finding that no conspiracy existed, Defendants Jones and KIA Motors America cannot be found to be

acting under color of state law on the theory that a conspiracy existed with a state actor.  Plaintiff's allegations only support this theory for finding that Defendants Jones and KIA Motors America acted under state law.  The other means by which a person can be found to be acting under color of state law are not supported by the allegations, i.e., "where private actors are performing functions 'traditionally the exclusive prerogative of the state' . . . where the government 'has coerced or at least significantly encouraged the action alleged to violate the Constitution.'"  *Willis v. University Health Services, Inc.*, 993 F.2d 837, 840 (11th Cir.) (quoting *National Broadcasting Co., Inc. v. Communication Workers of America, AFL-CIO*, 860 F.2d 1022, 1026 (11th Cir. 1988) (footnote omitted)), *cert. denied*, 510 U.S. 976 (1993); *cf. Hernandez v. Schwegmann Bros. Giant Supermarkets, Inc.*, 673 F.2d 771, 772 (5th Cir. 1982) (finding that the police officers' reliance on a witness's statement did not convert the witness into a state actor in the absence of a preconceived plan).  Thus, the lack of state action by Defendants Jones and KIA Motors America has caused Plaintiff to fail to state a § 1983 claim against them.

Turning to the claims against the governmental Defendants, a municipality or county can only be held liable when its custom or policy causes a constitutional deprivation.  *Board of County Comm'rs of Bryan County, Okla. v. Brown,* 520 U.S. 397, 404-05,

117 S.Ct. 1382, 1388 (1997).  The custom or policy must be also the moving force behind the alleged injury.  *Id.* at 404, 117 S.Ct. at 1388.  Plaintiff does not indicate that a custom or policy is involved in her claims, much less a policy or custom that is deliberate.  *Id.*  Rather, Plaintiff's allegations rarely mention the name of a governmental Defendant.  In most instances Plaintiff refers to an unidentified employee of a governmental entity or a division of the governmental entity, such as, police officer or DA's office, respectively.  With such vagueness in the allegations, and liability being sought to be imposed based on the actions of individuals or subordinate agencies, Plaintiff appears to be seeking to hold the governmental Defendants liable for the acts of its employees or a division.  Liability in a § 1983 action against a city or county, however, cannot be imposed based on the actions of their employees under the theory of *respondeat superior*.  *Monell v. Department of Social Services of New York*, 436 U.S. 658, 691, 98 S.Ct. 218, 2036 (1978); see *Gold v. City of Miami*. 151 F.3d 1346, 1350 (11th Cir. 1998) ("There is no *respondeat superior* liability making a municipality liable for the wrongful actions of its police officers in making a false arrest.").  In the absence of allegations showing involvement of a custom or policy, the allegations against Defendants City of Mobile, City of Daphne, and Baldwin County fail to state a claim upon which relief can be granted

III.   Conclusion.

Based upon the foregoing reasons, it is recommended that this action be dismissed with prejudice, prior to service of process, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief can be granted.

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1.   **Objection**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

17

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   **Transcript (applicable where proceedings tape recorded)**. Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

DONE this 25th day of June, 2009.

                                s/BERT W. MILLING, JR.
                                UNITED STATES MAGISTRATE JUDGE